# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARSHA K. BOYANOWSKI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:12-CV-139-JEM |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Marsha K.

Boyanowski on May 1, 2012, and Plaintiff's Brief in Support of Plaintiff's Complaint to Review

Decision of Commissioner of Social Security Administration [DE 20], filed by Plaintiff on October

15, 2012. Plaintiff requests that the March 2, 2012, decision of the Appeals Council to deny her

disability insurance benefits be reversed or, alternatively, remanded for further proceedings before

a new Administrative Law Judge ("ALJ"). For the reasons set forth below, the Court grants

Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 24, 2009, Plaintiff filed an application for disability insurance benefits ("DIB"),

alleging a disability onset date of January 1, 2004. Plaintiff's application was denied initially and

upon reconsideration, and Plaintiff requested a hearing in front of an ALJ. A hearing was held on

July 19, 2010 at which Plaintiff amended her alleged onset date to May 31, 2008, and Plaintiff, her

husband, and Vocational Expert ("VE") Michelle Peters testified. In his decision dated November

19, 2010, the ALJ found Plaintiff not disabled from the time of her alleged onset date through a date

last insured ("DLI") of June 30, 2009. Plaintiff had alerted the ALJ at the hearing that the ALJ had

miscalculated the DLI, which should have been March 31, 2011, but it remained uncorrected in the

ALJ's decision.

Plaintiff timely filed a Request for Review of Hearing Decision/Order with the Appeals Council on December 7, 2010. The Appeals Council granted review and in its decision dated March 2, 2012, corrected the DLI to June 30, 2011. It left the findings of the ALJ otherwise undisturbed. The Plaintiff did not further appeal the Appeals Council decision, making it the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A.    Background

Plaintiff was born in 1966 and was 44 years old on the date of the hearing. She attended college from 2003 through 2008 and was one class short of a degree in pastoral ministry. In the fifteen years prior to her alleged onset date, her only employment was as an interpreter for the deaf.

### B.    Medical Evidence

Plaintiff's record reflects a history of frequent episodes of pyelonephritis, or kidney infections, accompanied by kidney stones and urinary tract infections, dating back to approximately 1984. Records available to the ALJ date back to 1992, when Plaintiff moved to Indiana. Treatment with long-term suppressive medication helped to control her pyelonephritis. However, in 1992 Plaintiff reported to Dr. Nancy Hockley, a urologist at Parkview Memorial Hospital in Fort Wayne, that she continued to have three to four urinary tract infections a year even on suppressive

medications. In July 1992, Plaintiff visited the Parkview emergency room for severe flank pain caused by a suspected kidney stone. A cystoscopy was performed under general anesthetic, and a large amount of mucus was removed from Plaintiff's right ureter. Because Dr. Hockley also saw evidence of urine refluxing from the ureters back into the kidneys during the cystoscopy, bilateral ureteral reimplantation surgery was performed in September 1992, a procedure in which the ureters were severed from the bladder and reattached to correct abnormal positioning.

Dr. Hockley reported in 1995 that Plaintiff continued to have urinary tract infections after the reimplantation surgery. The record shows that Plaintiff continued to complain to Dr. Hockley of flank and abdominal pain, sometimes severe, in the years that followed. She sought treatment in the emergency room on numerous occasions, receiving intravenous pain medication on some of her visits. She was hospitalized at least once. Test results sometimes reflected urinary tract infections and other times kidney stones or other calcifications. In 1993 and 1995, Plaintiff was referred to the Cleveland Clinic, where they recommended further long-term suppressive medications. In 1997, Plaintiff underwent a hysterectomy, and the surgeons reported being unable to place ureteral stents because of heavy scarring of the bladder and shortened, crisscrossed ureters.

Plaintiff's records show fairly consistent complaints and testing until August 2009 when Dr. Donald Urban performed an cystoscopy to investigate yet another bout of abdominal pain. Because he found mucus and air in Plaintiff's bladder, Dr. Urban suspected a possible colovesical fistula, a pathway between the colon and bladder. An earlier CT scan in August 2008 and colonoscopy in September 2008 had revealed scattered colonic diverticulosis of moderate severity. Dr. Urban referred Plaintiff to colorectal surgeon Dr. Kelly Klinker for evaluation of the possible fistula. Although initial testing indicated no signs of a fistula, Dr. Klinker recommended diagnostic

laproscopic surgery because Plaintiff continued to have abdominal pains and Dr. Urban continued to be concerned about a possible fistula. Dr. Klinker performed the surgery on January 13, 2010. She found the sigmoid colon "quite adherent" to the bladder and "intimately involved" with the left ureter, complicating the surgery and requiring her to convert it from laproscopic to open surgery. The sigmoid colon was removed and surgery completed. Plaintiff returned to surgery hours later because of post-operation hemorrhaging, and a small bowel resection was performed. At a January 25, 2010, follow-up exam, Plaintiff told Dr. Klinker that she continued to have urinary symptoms but that they were improved. On February 8, 2010, Dr. Klinker wrote that Plaintiff was "doing very well."

Plaintiff's record also reflects a history of chronic pain, with diagnoses of rheumatoid arthritis, fibromyalgia, and chronic regional pain syndrome at various times. She also frequently complained to doctors of migraine headaches. Plaintiff has additionally been diagnosed with sleep apnea, diabetes, and hypertension and has complained at various times of balance issues, tremors, and swelling in her hands, ankles, and feet.

Dr. Syed Sohail performed a consultative examination on May 1, 2009. Dr. Sohail found diffuse tenderness in Plaintiff's muscles of both shoulders, elbows, hips, and knees, but he noted normal muscle tone, grip strength, and ability to perform fine and gross movements. Dr. Sohail also observed some musculoskeletal problems, noting a slightly antalgic gait, slightly stooping station, inability to walk on heels and toes, and poor and unsustainable tandem walk. He concluded that Plaintiff could do light work involving lifting less than fifteen pounds. Reviewing physician Dr. R. Bond completed a Residual Functioning Capacity Assessment on June 3, 2009, determining that Plaintiff could frequently lift and carry ten pounds and occasionally twenty. He also concluded that

she could stand and walk for six hours out of an eight-hour workday and sit six out of eight hours. He noted that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl but had no other limitations. He also wrote that Plaintiff's self-reported symptoms were "credible to the degree her functioning is limited by this RFC" without further elaboration.

## C.     Plaintiff's Testimony

At the hearing, Plaintiff testified that she suffers from abdominal pain caused by her various illnesses. First, she stated that she has pain in the area of her kidneys due to swelling caused by her recurring pyelonephritis. She stated that the problem had gotten worse in the two years preceding the hearing, occurring approximately twice weekly and requiring her to lie in bed with a heating pad to ease the pain. She also testified that she suffers three to four urinary tract infections a year and that she would miss three to four days of work for each infection before medications start to take effect. She testified to additional abdominal pain unrelated to her kidneys in her upper right quadrant that had occurred about once a month over the last "couple of years," pain that she rated as a nine on a ten point scale. While unsure of the cause, she believed the pain was related to possible gallbladder problems or to adhesions resulting from several surgeries, including surgeries for endometriosis years earlier and the surgery on her colon and small intestine in January 2010, six months prior to the hearing. She was unsure if doctors believed the recent colon surgery had corrected the flare-ups of her adhesions but stated that her life had not improved since the surgery.

Plaintiff also testified that she suffers from frequent migraines that last five to six hours and require her to rest in a quiet, dark place. She demonstrated tremors in her hands to the ALJ and said her speech the day of the hearing demonstrated her typical slurred speech. According to Plaintiff, she sometimes avoids using her hands to keyboard or sign when they ache due to swelling, which

can occur when she walks or is sometimes present when she wakes up. She also testified to "pretty constant" tingling or numbness in her hands and feet, due either to her diabetes or fibromyalgia. Plaintiff rated pain from her fibromyalgia in her neck, hips, and knees as a nine on a ten point scale on "bad days," which she said occur three or four days a week.

Finally, Plaintiff testified about the combined effect of her impairments on her ability to function. She stated that she limits her walking to between rooms of her house on a bad day. On a better day she may walk about a block and a half to the post office but then needs to lie down. She stated that she lies down every day and some days takes naps. However, she said her CPAP has treated her sleep disorder well enough that it does not cause her daytime fatigue. She stated on bad days she can only sit three to five minutes before needing to stand but can sit "a little longer" on good days. However, she spends much of most days lying in bed or in her recliner. Also on bad days, she said she is unable to lift her shoulder above her head or lift a gallon of milk without pain. Plaintiff also stated that others in the household do all the housework.

## D.      Vocational Expert Testimony

VE Michelle Peters testified that she heard Plaintiff's testimony and had reviewed exhibits in her file dealing with her past relevant work as a deaf interpreter. The ALJ presented the VE with a hypothetical of a person aged 42 to 44, educated at a high school graduate level, with the same past relevant work as Plaintiff, and limited to light work involving occasional climbing, balancing, kneeling, crouching, and crawling. The VE testified that such an individual would be able to perform Plaintiff's past relevant work as a deaf interpreter. She said her answer would not change if an additional restriction on lifting anything above fifteen pounds were added. However, she testified that if Plaintiff's testimony about needing to lie down during the day and periodically stand

were credible, Plaintiff would not be able to complete an eight hour work day, leaving no work available for her.

## E.     ALJ's decision

The ALJ's decision was issued on November 19, 2010.  The ALJ determined that Plaintiff's DLI was June 30, 2009.  He found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of May 31, 2008, through her DLI.  He found that Plaintiff suffered from five severe impairments prior to her DLI:  obesity, fibromyalgia, obstructive sleep apnea, headaches, and diabetes.  However, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled a Listing.  He also found her testimony regarding her symptoms "not credible to the extent they are inconsistent with [her] residual functional capacity."  The ALJ then determined that Plaintiff had a residual functioning capacity ("RFC") for less than a full range of light work, limited to lifting no more than fifteen pounds and to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  Finally, the ALJ found that Plaintiff was not disabled because she was able to perform her past work as a deaf interpreter.

## F.     The Appeals Council Decision

Plaintiff's attorney filed a standard Request for Review of Hearing Decision/Order form on December 7, 2010.  Neither additional evidence nor a written request for an extension of time to file additional evidence appears to have been submitted with the form as the form instructions allowed. *See* 20 C.F.R. § 404.968.  On February 8, 2011, Plaintiff faxed a brief to the Appeals Council, pointing out the incorrect DLI, summarizing the facts of the case, and asking for a finding of disability or, alternatively, for remand for a new hearing in front of a new ALJ.  Almost eleven months later, on January 5, 2012, the Appeals Council notified Plaintiff that it was reviewing the

ALJ's decision and intended to correct the DLI to June 30, 2011. The notice stated, however, that the Appeals Council was "prepared to issue a decision finding that [Plaintiff was] not disabled at any time through the date last insured of June 30, 2011." It also announced the Appeals Council's intention to adopt all the ALJ's findings except to modify them to include the period between the incorrect DLI and the hearing. It also notified Plaintiff that she could send "more evidence or a statement about the facts and the law" within thirty days. The notice further stated that Plaintiff could request an appearance before the Appeals Council, which it would grant if there were "an important question of law or policy" or if "[o]ral arguments would help [them] reach a proper decision." *See* 20 C.F.R. § 404.976(c). The brief sent by Plaintiff eleven months earlier was included in the record, but no brief in support of Plaintiff's requests before the Appeals Council was filed within the thirty day window after review was granted. Two exhibits regarding medical procedures done in May through June of 2011—post-dating the ALJ's decision—made it into the record, but it is unclear when these exhibits were submitted. Plaintiff did not request an appearance before the Appeals Council.

On March 2, 2012, the Appeals Council issued its decision. The decision stated that the Appeals Council had not received additional evidence or comments or a request to appear from Plaintiff within the allotted thirty days. As it said it would, the Appeals Council adopted the ALJ's statements regarding the applicable law, the issues in the case, and the evidentiary facts. It also agreed with the ALJ's findings under steps one through four of the sequential evaluation process, including the ALJ's RFC and credibility findings. However, it disagreed with the DLI finding and, therefore, modified the step four finding so that Plaintiff was found to be capable of performing her past relevant work as a deaf interpreter through November 19, 2010, the date of the hearing, instead

of through only June 30, 2009.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th

Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f),

416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal or remand of the ALJ's decision based on the following arguments: (1) the ALJ failed to sufficiently articulate his credibility determination; (2) the ALJ ignored entire lines of evidence in determining Plaintiff's RFC, resulting in an RFC not supported by substantial evidence; and (3) because the ALJ used an incorrect DLI of June 30, 2009, he failed to consider the time period between that date and the date of his decision, effectively denying Plaintiff a hearing for that time period in violation of her due process rights. Because the Court finds that the ALJ's credibility findings and RFC determination were not adequately articulated, the Court remands.

**A.     Credibility Finding**

Plaintiff first argues that the ALJ's credibility determination was inadequate because he failed to assess the credibility of specific, material statements and instead relied on boilerplate language disapproved of by the Seventh Circuit Court of Appeals to discount her testimony as a whole. Because the ALJ chose not to account for significant, material statements regarding Plaintiff's pain from kidney and urinary tract infections in her RFC without first assessing their credibility, this Court remands.

An ALJ must consider a claimant's subjective statements regarding symptoms as a factor in determining the claimant's RFC and must include a finding on the credibility of those statements if he declines to account for them in the RFC. *See* 20 C.F.R. § 404.1529(c)(1); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4. To

be sufficiently specific, the written decision must "build a logical bridge from the evidence to [the] conclusion, but [it] need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Schmidt*, 395 F.3d at 744). An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738. An ALJ's credibility determination will be found "patently wrong" only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

In this case, the ALJ wrote that he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not credible to the extent they are inconsistent with the above residual functional capacity." The ALJ recounted Plaintiff's testimony in three places. First, he stated very generally that Plaintiff "testified to the presence of incapacitating discomfort and associated functional limitations." He also repeated Plaintiff's specific testimony that she had "aching and soreness in her neck, hands, hips, and knees" due to fibromyalgia and that she said she "continues to experience migraines a couple of times a week" despite taking medications. The ALJ did not mention Plaintiff's testimony about having to lie down with a heating pad due to abdominal pain, about not being able to work three or four days per urinary tract infection, about her alleged swelling, tingling, and numbness in her hands, or about her tremors.

The ALJ gave specific reasons for dismissing Plaintiff's allegations of pain related to her fibromyalgia and migraines. He also more generally dismissed Plaintiff's testimony regarding her "allegedly disabling impairments" by discussing some of the factors the regulations suggest he consider in assessing a claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ found Plaintiff's testimony that her impairments were disabling not credible because her

impairments "were present at approximately the same level of severity prior to the alleged onset date" and because the treatment for her impairments was "essentially routine and/or conservative in nature." On both points, the ALJ wrote collectively of Plaintiff's impairments and cited no evidence which would lend insight into which specific symptoms he was addressing.

The failure to address the credibility of specific statements does not necessarily mean that the ALJ failed to adequately articulate the reasons for his finding. *See Shideler*, 688 F.3d at 310 (stating that a decision "need not provide a complete written evaluation of every piece of testimony and evidence"). In this case, however, the VE testified that if the ALJ found Plaintiff's testimony regarding her need to lie down during the day to be credible, it would affect whether work existed for Plaintiff in the economy. One of the reasons Plaintiff gave in her testimony for needing to lie down during the day was pain from her kidney problems. Therefore, the specific testimony about symptoms resulting from Plaintiff's kidney problems, if found credible, is important to determining Plaintiff's RFC. By failing to address symptoms and functional limitations Plaintiff attributed to her kidney and urinary tract infections, this Court is unable to discern whether the ALJ did not account for them in Plaintiff's RFC because he did not find them credible or because he failed to consider them at all. The "logical bridge" between the evidence and the ALJ's conclusion is missing. Therefore, the Court remands with instructions for the ALJ to make specific findings regarding the credibility of Plaintiff's alleged symptoms related to her kidney and urinary tract impairments and any other statements that may affect Plaintiff's RFC.

**B.     Residual Functioning Capacity**

Plaintiff next argues the ALJ ignored entire lines of evidence relating to balance issues, tremors, edema, urinary system problems, gastrointestinal problems, and metabolic syndrome in making his RFC determination.  The Commissioner first argues that Plaintiff waived this entire RFC challenge because her "skeletal" argument failed to cite any evidence of functional limitations caused by her non-severe impairments which would affect Plaintiff's ability to work.  Undeveloped arguments may be treated as waived based on the concern that they provide an opposing party insufficient notice to respond, but that concern is not present in this case.  *See Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (explaining that "skeletal" arguments are treated as waived "to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond"); *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (declining to find disability Plaintiff's argument that ALJ failed to consider all her impairments in her RFC waived although Plaintiff did not explain how they limited her ability to work).  While Plaintiff's argument on this point is succinct, it cites the relevant law, and her fact section points to evidence of functional limitations that would affect her RFC.  It is not the kind of "skeletal" argument found in the cases the Commissioner cites to support this argument.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (finding an argument waived where Defendant "bur[ied] it in a single unreasoned paragraph"); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (finding a claim waived where Plaintiff failed to state its elements or point to any evidence to establish their presence).  Plaintiff's argument was sufficient notice for the Commissioner to respond and is, therefore, not waived.

The Court now turns to the merits of Plaintiff's argument. An ALJ must evaluate all relevant evidence when determining a claimant's RFC, including evidence of impairments he has not found to be severe. 20 C.F.R. § 404.1545(a); *Craft*, 539 F.3d at 676. An ALJ must articulate his analysis of the evidence sufficiently enough that a reviewing court is assured that the important evidence was considered. *See Scott*, 297 F.3d at 595; *Diaz*, 55 F.3d at 300; *Green*, 51 F.3d at 101. This articulation standard does not require an ALJ to explain how he handled every piece of evidence in the record, but an ALJ may not ignore entire lines of evidence that contradict his determination. *Arnett*, 676 F.3d at 592 (citing *Zurawski*, 245 F.3d at 888-89). Because the Court is unable to discern whether the ALJ considered important evidence of Plaintiff's urological, kidney, and gastrointestinal problems in making his RFC determination, the Court remands.

Plaintiff listed pylonephritis as a cause of her disability in her application for benefits. She also focused heavily on urinary tract and kidney infections and the pain resulting from them in her testimony and in her closing argument at the hearing, at which her attorney concluded that "[t]here's enough . . . to justify disability on the . . . pyelonephritis alone." AR 60. The ALJ noted in his decision that Plaintiff testified that her fibromyalgia, sleep apnea, migraines, diabetes, "polynephritis," abdominal pain, slurred speech, tremors, and urinary tract infections affect the extent to which she can physically perform basic work-related activities. The ALJ then analyzed the effects of Plaintiff's fibromyalgia, sleep apnea, migraines, obesity, and diabetes mellitus—the five impairments he found to be severe—on her RFC. However, the ALJ made no further mention of the slurred speech, tremors, recurring pyelonephritis, abdominal pain, or recurring urinary tract infections he had just listed or to intestinal problems related to those infections.

The Commissioner argues that the ALJ's mentioning these non-severe impairments, coupled with his statement that he "carefully reviewed and considered all the evidence regardless of whether it is specifically cited in [the] decision" shows that the ALJ did not ignore these impairments. Given the large amount of evidence related to Plaintiff's urological, kidney, and intestinal systems and Plaintiff's focus on those impairments in support of her application, however, the ALJ's lack of attention to them is surprising. *See Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984) (requiring some articulation of the ALJ's assessment of "considerable evidence" that runs counter to his decision). The ALJ's passing mention and boilerplate language provide this Court no insight into whether the ALJ considered evidence of these impairments and found they had no effect on Plaintiff's functioning or simply ignored the evidence. *See id* at 79. ("[W]hen the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'")(quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Without sufficient articulation of the ALJ's consideration of this evidence, this Court cannot determine if his decision is supported by substantial evidence and must remand. On remand, the ALJ is directed to perform and articulate more thoroughly an assessment of the evidence regarding Plaintiff's urinary, kidney, and gastrointestinal impairments. While the amount of evidence regarding Plaintiff's tremors and swelling is far less, some level of articulation regarding those impairments is also warranted.

## C.    Due Process

Plaintiff also argues that her right to a hearing according to 42 U.S.C. § 405(b)(1) and the Due Process clause of the Fifth Amendment were violated because the Appeals Council did not remand the case for re-hearing after correcting the DLI.  She argues that the error in DLI effectively denied her a hearing for the period between the incorrect DLI and the hearing date.  Plaintiff did, in fact, testify about the entire time period through her hearing date.  She argues, however, that she was denied the opportunity to have the sole fact finder for this period—the Appeals Council—witness her appearance and demeanor as evidence of the pain to which she testified, a crucial factor to her claim.  The Commissioner counters that due process was satisfied when Plaintiff was notified of her opportunity to provide new evidence or to ask to appear before the Appeals Council for oral argument, options she chose not to exercise.[1]  Plaintiff argues that an appearance for oral arguments is not a  sufficient substitute for the type of evidentiary hearing conducted by an ALJ.  Accordingly, she requests a new hearing ordered on remand.  Although this Court has already ordered a remand, a new hearing in front of an ALJ is not automatically required on remand.  *See* 20 C.F.R. § 404.983 (giving the Appeals Council the discretion to decide a remanded case or further remand to an ALJ).

Due process requires that before a person can be deprived of a property interest, she must have at a minimum notice of the deprivation and a meaningful opportunity to contest it.  *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976).  To determine whether the procedures afforded Plaintiff meet this requirement, the Court must balance the factors established in *Mathews v. Eldridge*:

---

[1]Plaintiff did submit additional medical records to the Appeals Council at some point and submitted a brief almost a year before the Appeals Council granted review.  However, nothing was submitted within the thirty days after the Appeals Council notified Plaintiff that it was granting review.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. While few courts in this circuit have addressed cases with similar facts, cases in other circuits are instructive. The Sixth Circuit Court of Appeals held that due process did not require that a claimant's case be remanded for a new hearing to re-adjudicate his onset date after the Appeals Council reopened his fully favorable decision to correct his date last insured to a date prior to the onset date found by the ALJ, resulting in a loss of benefits. *Ferriell v. Commissioner of Social Security*, 614 F.3d 611 (6th Cir. 2010). The court reasoned that because the claimant had the opportunity to raise the onset date issue with the Appeals Council in a written statement, there was a low risk of erroneous deprivation. *Id*. at 621. Further, any additional procedure requiring a remand after a DLI is revised would have resulted in little additional accuracy and potentially substantial costs to the Social Security Administration. *Id*. Adopting the reasoning in *Ferriell*, a district court held that a claimant was not denied due process when the Appeals Council declined to remand for re-hearing after it corrected a DLI that the ALJ had erroneously found to be a year before the hearing instead of a year after it. *Farley v. Astrue*, No. 5:12-CV-29, 2013 WL 162444 (N.D. W. Va Jan. 15, 2013). The Plaintiff had argued that the opportunity to appear before the Appeals Council was an insufficient substitute for an evidentiary hearing before an ALJ, but the court reasoned that due process does not require any specific type of hearing, only the right to be heard. *Id.* at *3.

This Court also finds the reasoning in *Ferriel* persuasive and applicable to the facts in this case. The risk of erroneous deprivation is small. The Appeals Council provided Plaintiff with

notice that it intended to correct her DLI but otherwise adopt the ALJ's findings. It also provided

Plaintiff opportunities to present arguments against adopting those findings and to argue that a new

hearing was necessary because her demeanor and appearance were critical to the decision,

opportunities Plaintiff did not take.[2] The probable value of additional safeguards is also small.

While the value to Plaintiff of a remand for another hearing might have been substantial, the Court

is to assess the value of additional procedure generally, not in specific instances. *Mathews*, 424 U.S.

at 344. ("[D]ue process rules are shaped by the risk of error inherent in the truth finding process as

applied to the generality of cases, not the rare exceptions.") A general rule requiring automatic

remand for a new hearing whenever a DLI is corrected from before the hearing date to after the

hearing date, when pain might be a deciding factor, and when the claimant's hearing testimony or

appearance might be critical to assessing that pain, even when the claimant has not argued the need

for a new hearing, would be of little value but potentially add great administrative burden and cost.

This assessment of the *Mathews v. Eldridge* factors leads this Court to the conclusion that due

process has been satisfied. Therefore, the Court will leave the decision of whether to hold a new

hearing upon remand to the discretion of the Social Security Administration.

Plaintiff also asks that the Court order any new hearing be before a new ALJ, but she offers

no argument in support of this request. "Courts can suggest but cannot require a change of

administrative law judges, unless the administrative law judge has demonstrated a degree of

bias . . . that would disqualify him as a matter of due process from further participation in the

litigation." *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 386 (7th Cir. 2010)

(citations omitted). Because Plaintiff provided no argument for why assignment to a new ALJ is

---

[2]Even the brief submitted by Plaintiff prior to the granting of review merely summarized the Plaintiff's impairments and made no real argument for why the ALJ was wrong or why a new hearing was necessary.

warranted, this Court will neither order nor suggest it.

## ATTORNEY'S FEES

Plaintiff requested attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). However, her request is incomplete. The EAJA provides for attorney's fees when: (1) Plaintiff was a "prevailing party"; (2) the Commissioner's position was not "substantially justified"; (3) there exists no "special circumstances" that would make an award unjust; and (4) Plaintiff filed a timely and complete application with the district court. 28 U.S.C. § 2412(d)(1)(A); *United States v. Pecore*, 664 F.3d 1125, 1131 (7th Cir. 2011). EAJA fees are determined by the time spent on the case and a reasonable hourly rate. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002); 28 U.S.C. §§ 2412(d)(1)(B), 2412(d)(2)(A).

Plaintiff's request fails to include information required by the EAJA, including "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). Nor does Plaintiff's request include allegations that she is the "prevailing party" and "that the position of the United States was not substantially justified," as is required by the EAJA. *Id.* Therefore, Plaintiff's request for attorney's fees under the EAJA is denied, without prejudice to Plaintiff's right to supplement her request to supply the missing requirements within thirty days. *See id*.

**CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Plaintiff's Motion to Review Decision of the Commissioner of Social Security Administration [DE 20] and **REMANDS** this matter for further proceedings consistent with this opinion.

So ORDERED this 2nd day of July, 2013.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record